UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER M.E., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY,[1] <br> Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 23-01291 RAO <br><br><br> **MEMORANDUM OPINION AND ORDER** |

## I.     INTRODUCTION

Plaintiff Tyler M.E.[2] ("Plaintiff") challenges the Commissioner's denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

///

///

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley, the Commissioner of Social Security, is hereby substituted as the defendant.

[2] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. BACKGROUND

On March 8 and November 16, 2016, respectively, Plaintiff's mother applied for SSI and children's DBI on Plaintiff's behalf, alleging disability beginning August 11, 2010. (AR 64; *see* AR 248-54.) His claims were first denied on April 5, 2017, and upon reconsideration on August 11, 2017. (AR 64.) Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ") that took place over video on June 5, 2019. (*Id.*)

### The ALJ's June 27, 2019, Decision

On June 27, 2019, the ALJ rendered an unfavorable decision. At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 11, 2010. (AR 66.) At **step two**, Plaintiff had multiple severe impairments: unspecified mood disorder, insomnia, anxiety, attention-deficit hyperactivity disorder ("ADHD"), and obesity. (*Id.*) At **step three**, Plaintiff did not have an impairment or combination of impairments that medically equals the severity of the impairments listed in 20 C.F.R. §§ 404.1521 and 416.921 *et seq*. (AR 67.) The ALJ's decision is not clear as to what Plaintiff's residual functional capacity ("RFC") is, or whether an official determination was made, but his decision mentions Plaintiff had mild limitations in understanding, remembering, or applying information; mild limitations in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing himself. (AR 73-74.) The ALJ did not analyze **steps four** and **five**. (*See* AR 65.) Plaintiff did not appeal this decision.

### The ALJ's June 10, 2022, Decision

On March 1 and March 4, 2021, Plaintiff's mother again applied for DIB and SSI respectively, alleging disability beginning January 1, 2003. (AR 27.) Plaintiff's application was denied on July 29, 2021, (AR 144-53), and upon reconsideration on November 10, 2021 (AR 142-43). On January 3, 2022, requested a hearing before an ALJ. (AR 169-71.) On June 2, 2022, Plaintiff

2

appeared with counsel for a telephonic hearing before the ALJ. (AR 43-60.)

On June 10, 2022, the ALJ rendered an unfavorable decision. (AR 19-34.) At **step one**, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2003. (AR 31.) At **step two**, Plaintiff has multiple severe impairments: ADHD, anxiety, and depression. (*Id.*) At **step three**, Plaintiff does not have an impairment or combination of impairments that medically equals the severity of the impairments listed in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (*Id.*) Plaintiff's RFC includes a full range of work at all exertional levels except he can perform simple routine tasks with no public contact. (AR 33.) At **step four**, Plaintiff has no past relevant work. (AR 36.) At **step five**, considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy Plaintiff could perform. (*Id.*)

On July 3, 2023, Plaintiff filed this suit challenging the Commissioner's decision. (Dkt. No. 1.) The parties filed their respective briefs for the Court's consideration. (Dkt. Nos. 13 ("Pl. Brief"), 14 ("Comm'r Brief"), 15 ("Pl. Reply").)

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they, when applied against proper legal standards, are supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is shown "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

1998) (citation omitted). "[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "However, the ALJ 'need not discuss *all* evidence presented'" to her, but "must only explain why 'significant probative evidence has been rejected.'" *Hurn v. Berryhill*, No. 17-00884, 2018 WL 4026357, at *3 (W.D. Wash. Aug. 23, 2018) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

"'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

### IV. DISCUSSION

Plaintiff seeks remand and raises five issues for review:

(1) whether the ALJ failed to develop the record with current medical evidence;
(2) whether the ALJ properly determined Plaintiff's mental RFC;
(3) whether the ALJ failed to address obesity as a severe impairment;
(4) whether substantial evidence supports the ALJ's step-five determination; and
(5) whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony about his unique combination of severe impairments, symptoms, and resulting limitations.

(*See* Pl. Brief at ii.)³ The Court addresses each issue in turn.

### a. Whether the ALJ failed to develop the record with current medical evidence

Plaintiff contends the ALJ was unreasonable in assuming Plaintiff's physical and mental conditions have not changed because she relies on medical evidence dated at least five years ago. (Pl. Brief at 11; *see* Pl. Reply at 4-5.) The Commissioner contends the ALJ fully developed the record, which was neither ambiguous nor inadequate. (Comm'r Brief at 13.) The Court agrees with the Commissioner.

#### i. Applicable Law

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)); *see McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2011); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). A specific finding of ambiguity or inadequacy is unnecessary to trigger this duty "where the record establishes ambiguity or inadequacy." *McLeod*, 640 F.3d at 885. An ALJ may discharge this duty by subpoenaing the claimant's healthcare providers, submitting questions to those providers, continuing the hearing, or keeping the record open to allow for supplementation. *Tonapetyan*, 242 F.3d at 1150. An absence of healthcare records does not necessarily mean the record is ambiguous or inadequate. *Mayes*, 276 F.3d at 459-60.

#### ii. Analysis

Here, the duty to further develop the administrative record was not triggered because the evidence presented was neither ambiguous nor inadequate. *See, e.g.,*

---

³ The issues described in the Table of Contents are different than those listed under the heading, "VI. ISSUES." The Court addresses each issue according to how they are listed in the Table of Contents.

*McLeod*, 640 F.3d at 885-86 (finding the record inadequate where the claimant testified he was receiving a veterans' administration pension based on unemployability but "had no idea whether he had a disability rating," which "might very well matter" in the claimant's social security benefits proceedings). When the ALJ asked Plaintiff's then-attorney whether he was "aware of any outstanding evidence requests," or if he "consider[ed] the record complete," counsel explicitly stated, "The record is complete." (AR 46-47.) Plaintiff's argument that a psychological examination from five years ago is irrelevant to his disability determination is unpersuasive because past medical history is relevant and the ALJ relied on more than just that examination, including medical notes from more recent years, in reaching her conclusion. (*See* Comm'r Brief at 14; *see, e.g.*, AR 34 (citing Exh. B1F (medical notes spanning June 15, 2019 through May 5, 2021)), 35 (citing Exh. B2F (medical notes spanning May 5, 2021 through October 8, 2021))); *see also Mayes*, 276 F.3d at 462 (evaluating the claimant's past medical history). Even assuming arguendo it was incorrect for the ALJ to assume "Mr. Erb's physical and mental conditions have not changed," it is Plaintiff's burden to prove disability. (Pl. Brief at 11); *Mayes*, 276 F.3d at 459. He did not meet that burden here.

### b. Whether the ALJ properly determined Plaintiff's mental RFC

Plaintiff argues the ALJ's RFC fails to address interaction with supervisors and coworkers. (Pl. Brief at 12-13.) The Commissioner argues the RFC reasonably accounted for Plaintiff's moderate mental functional limitations by limiting him to simple routine tasks without public contact. (Comm'r Brief at 17.) The Court agrees with the Commissioner.

#### i. Applicable Law

An ALJ must consider the limiting effect of all of a claimant's impairments. *George A. v. Berryhill*, No. 18-00405, 2019 WL 1875523, at *3 (C.D. Cal. Apr. 24, 2019). However, those limiting effects that do not significantly interfere with a claimant's ability to work are not required to be included in a claimant's RFC. *Woods*

*v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022); *Bray v. Astrue*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). An ALJ need not set forth specific reasons for why non-severe mental limitations were excluded from an RFC. *Tyson v. Kijakazi*, No. 21-00688, 2023 WL 2313192, at *5 (E.D. Cal. Mar. 1, 2023) (citing *Van Houten v. Berryhill*, No. 17-1238, 2019 WL 691200, at *14 (E.D. Cal. Feb. 19, 2019) ("The omission of mental limitations from the RFC does not indicate the mental impairments were not considered, but rather reflects the conclusion that the impairments would not interfere with Plaintiff's ability to perform basic work activities.").

### ii. Analysis

Here, the ALJ did not err in omitting discussion of a limitation for interaction with supervisors or coworkers because the ALJ's RFC sufficiently accommodated Plaintiff's mental impairments. (*See* AR 32.) Further, the ALJ explicitly stated the determined RFC assessment "reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis," (AR 33), which "is sufficient to carry the burden imposed by the Regulations." *Tyson*, 2023 WL 2313192, at *5; *see id.* (citing *Woods*, 32 F.4th at 794 (holding no error where the ALJ's decision failed to explain why non-severe mental limitations were excluded from the RFC), and *Hilda V.A. v. Kijakazi*, No. 22-1064, 2023 WL 1107867, at *4 (C.D. Cal. Jan. 30, 2023) (same)); *see also Banks v. Berryhill, Acting Comm'r of Soc. Sec.*, No. 17-05535, 2018 WL 1631277, at *4 (C.D. Cal. Apr. 2, 2018) (finding that the ALJ considered claimant's mental limitations by explaining that the RFC assessment reflected the degree of limitation the ALJ found in the four areas of functional limitation); *Jones v. Berryhill*, No. 17-1138, 2018 WL 3956479, at *3 (C.D. Cal. Aug. 15, 2018) (finding no error where the ALJ stated that the RFC assessment reflected the degree of limitation the ALJ found in the step two analysis of claimants non-severe mental impairments).

The Court disagrees with the Commissioner's characterization of Plaintiff's argument that Plaintiff is arguing only the procedural errors of step three, and

therefore addresses the alleged substantive error. (*See* Comm'r Brief at 16.) Here, the ALJ properly determined Plaintiff's mental RFC because the RFC accounts for Plaintiff's dislike for being around people and inability to cope in public by imposing a limitation against public contact. (AR 34.)

### c. Whether the ALJ failed to address obesity as a severe impairment

Plaintiff argues the ALJ's finding of obesity as non-severe is not supported by evidence. (Pl. Brief at 14-15.) The Commissioner contends the ALJ's finding that Plaintiff's obesity was non-severe was proper because she relied on medical evidence in making that determination. (Comm'r Brief at 18-19.) The Court agrees with the Commissioner.

#### i. Applicable Law

An ALJ must consider the effects of a claimant's obesity, both by itself and in combination with any other impairments, on his ability to work. *Celaya v. Halter*, 332 F.3d 1177, 1181-82 (9th Cir. 2003). However, where a represented claimant fails to provide any evidence of functional limitations related to his obesity, the failure to specifically consider obesity is not reversible error. *Arellano v. Astrue*, No. 09-1186, 2010 WL 2991145, at *4 (C.D. Cal. July 26, 2010).

#### ii. Analysis

Here, the ALJ did not err in deeming Plaintiff's obesity non-severe because she considered the impact obesity could have on Plaintiff's ability to work, noting there was no evidence of any quantifiable or specific impact on Plaintiff's pulmonary, musculoskeletal, endocrine, or cardiac functioning. (AR 31.) And, as the Commissioner points out, the record indeed is void of subjective testimony in which Plaintiff himself attributes any difficulties he might experience working to his obesity. (*See* AR 49 (stating at the administrative hearing that mental health would keep him from working but making no mention of obesity), 87 (listing various impairments on Plaintiff's disability application as reasons Plaintiff cannot

work, none of which are obesity), 115 (same), 267 (same); *see also* AR 278 (self-identifying only mental impacts on Plaintiff's functional abilities), 321-23 (summarizing Plaintiff's medical impairments, none of which is obesity, in his brief)); *Arellano*, 2010 WL 2991145, at *3 (noting Plaintiff failed to assert that her obesity impacted her ability to work).

### d. Whether substantial evidence supports the ALJ's step-five determination

Plaintiff argues the step-five determination is erroneous because it does not account for his obesity nor mental limitations about working with others. (Pl. Brief at 15.) The Commissioner argues the step-five determination is proper because the ALJ presented to the vocational expert those limitations adequately supported by the evidence of record. (Comm'r Brief at 24.) The Court agrees with the Commissioner.

#### i. Applicable Law

An ALJ must consider the limiting effect of all of a claimant's impairments. *George A. v. Berryhill*, No. 18-00405, 2019 WL 1875523, at *3 (C.D. Cal. Apr. 24, 2019). However, those limiting effects that do not significantly interfere with a claimant's ability to work are not required to be included in a claimant's RFC. *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022); *Bray v. Astrue*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). So long as the ALJ "specifies reasons supported by substantial evidence for not including the non-severe impairment in the RFC determination, the ALJ has not committed legal error." *George A.*, 2019 WL 1875523, at *3 (internal brackets omitted).

#### ii. Analysis

Plaintiff's argument here seems to be a repetition of his arguments for Issues 2-3. In any event, the Commissioner's step-five determination is supported by the evidence because, as stated above, the RFC was proper in excluding limitations about supervisors, coworkers, and obesity, and the hypothetical the ALJ posed to

9

the vocational expert included all the limitations found to be supported by substantial evidence. *Kitchen*, 82 F.4th at 742 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); (*see* AR 58 (hypothesizing to the vocational expert an individual "of the claimant's age and education who doesn't have any exertional limitations [but] can perform simple and routine tasks and cannot have public contact").)

### e. Whether the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony about his unique combination of severe impairments, symptoms, and resulting limitations

Plaintiff testified to living at home with his mother, grandmother, uncle, and cousin. (AR 48.) Plaintiff never tried to obtain his driver's license because he doesn't trust himself to drive. (*Id.*) He testified to dropping out of high school near the end of twelfth grade, being in special education classes, and having "pretty bad" writing. (*Id.*) Plaintiff has not worked since high school, though he has looked for a job stocking shelves and similar employment. (AR 48-49.) Plaintiff has felt he needed a job to earn income but struggles because he does not like to go outside nor be around people. (AR 49.) His mental health also keeps him from working, though he sees his psychiatrist less than once every couple of months. (*Id.*) He testified to taking Concerta for ADHD since he was in elementary school but doesn't feel as though it helps. (AR 49-50.) There are other medications he has started taking since then but he doesn't remember when, and he doesn't think he has experienced any side effects from any of his medications. (AR 50.) On a typical day, Plaintiff watches TV all day in his room alone. (AR 50, 53.) He struggles to sleep, which causes him to wake up extremely early or late and get very little rest. (AR 50.) On the day of the hearing, Plaintiff woke up at 11:00 A.M., but he usually sleeps until 3:00 P.M. and does not go to bed until around 5:00 A.M. He

watches TV to help himself fall asleep and plays video games during the day. (AR 50-51.) He never leaves the house alone but will go to the store every two to three weeks with his grandmother to get food. (AR 51.) He does not have friends who come over, though he has a couple of friends online. (*Id.*) His mom is the one who fixes his meals and even though he knows how to do his own laundry, he doesn't. (AR 51-52.) He needs reminders to take his medication, shower, get dressed, and perform other hygienic tasks. (AR 52; *see also* AR 55.) He showers and changes his clothes once every two weeks. (AR 52.) Plaintiff testified he is 5'6" and 312 pounds; he has gained over 50 pounds in five months. (AR 52-53.)

Plaintiff got into a lot of trouble at school; he got into arguments, cut classes, and never turned in assignments because he couldn't concentrate in class. (AR 53.) He has never used illegal drugs, nor drank alcohol. (AR 54.) He once got in trouble with the police but doesn't remember why or when. (*Id.*) He doesn't do any chores despite his family telling him to. (*Id.*) He testified his mind is constantly running and makes it difficult for him to focus, even when he's watching TV or conversing. (AR 55.) Plaintiff also testified that a lot of things changed in the last year, like family members he does not really get along with moving in and out of his house. (AR 56-57.)

### i. The ALJ's Decision

The ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff was receiving conservative treatment, medical evidence showed only mild findings, and statements from Plaintiff's mother were unpersuasive. *(See generally*, AR 34-35.) Specifically, the ALJ noted mental status examinations did not reveal significant findings and Plaintiff consistently reported that his symptoms were controlled well with medication. (*Id.*) The ALJ summarized progress notes from June 2019 showing no suicidal ideation, normal speech, fair insight and judgment, and a depressed affect, although his symptoms were controlled well with medication. (*Id.*) In October 2019, Plaintiff was noted as having been out of his

medication for a few weeks, which caused his symptoms to worsen. In November 2019, after his medication was refilled, his symptoms were controlled. (*Id.*) In January 2020, Plaintiff felt well overall. (*Id.* (citing Exh. B1F).) The ALJ also stated that in March 2020, Plaintiff could not cope with being in public and around people; his anxiety was alleviated with medication; and Plaintiff declined to attend therapy despite his doctor's recommendation. Plaintiff was stable for the rest of 2020. (*Id.*)

Plaintiff remained stable through May 2021, but in July, Plaintiff reported being noncompliant with his medication for at least two months. (AR 34-35.) He requested only stimulant medication, which his doctor recommended against. (AR 35 (citing Exh. B2F).) Plaintiff became stable again in October 2021 and remained stable through March 2022. (*Id.* (citing Exhs. B2F, B3F).)

The ALJ did not credit Plaintiff' mother's, Ms. Erb, statements because they were not given under oath, she is not a medical professional nor competent to make a diagnosis or argue the severity of her son's symptoms in relation to his work abilities, and objective medical evidence does not support her statements. (*Id.*)

### ii. Applicable Law

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Once satisfied, the ALJ must examine the entire case record, which includes the claimant's own testimony, for evidence on the intensity, persistence, and limiting effects of her symptoms. In evaluating the claimant's credibility, a court may consider a multitude of factors, such as inconsistencies between the claimant's

statements, objective medical evidence, the claimant's daily activities, the claimant's work record, and statements from healthcare providers or third parties about the nature, severity, and effect of the symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). However, a lack of objective medical evidence substantiating the claimant's statements about her symptoms by itself is not grounds for discrediting the claimant's symptom testimony. *Id.* If the ALJ discounts the claimant's testimony for lack of credibility, he must provide specific, clear, and convincing reasons for doing so. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *see Manor v. Kijakazi*, No. 22-0666, 2023 WL 5836483, at *5 (E.D. Cal. Sept. 8, 2023) (quoting *Valentine v. Comm'r Soc. Sec. Admin*, 574 F.3d 685, 693 (9th Cir. 2009)) ("The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.").

### iii. Analysis

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence of record. (*See* AR 34.) Specifically, the ALJ found Plaintiff's symptoms were undermined by conservative treatment, lack of objective medical evidence, and statements made by Plaintiff's mother.

### 1. Conservative Treatment

A claimant's conservative treatment for an impairment is a valid reason to discount Plaintiff's subjective symptom testimony. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); *see also Brown v. Berryhill*, No. 16-0776, 2018 WL 573371, at *10 (E.D. Cal. Jan. 26, 2018) (determining whether treatment *as a whole* is conservative) (collecting cases).

Here, the ALJ reasonably discounted Plaintiff's testimony on the basis of conservative treatment because the only treatment Plaintiff received was prescription

13

medication around July 2021. (AR 34-35); *see Brown*, 2018 WL 573371, at *10. Furthermore, when a doctor advised Plaintiff receive therapy or counseling, he declined. (AR 34-35); *see Huizar v. Comm'r of Soc. Sec.*, 428 F.App'x 678, 680 (9th Cir. 2011) (finding the ALJ's credibility decision supported by substantial evidence where the claimant responded favorably to her prescribed medications and where she skipped a recommended objective test). The ALJ did not err here.

### 2. Improvement with Medication

Evidence that a claimant's symptoms improve when he complies with his medications is a valid reason to discount his symptom testimony. *See Lualemaga v. Berryhill*, No. 18-444, 2018 WL 6619745, at *11 (C.D. Cal. Dec. 18, 2018).

Here, the ALJ reasonably discounted Plaintiff's testimony on the basis of improvement with medication because when Plaintiff *was* diligent about taking his anxiety medication, his symptoms largely subsided. (AR 34-35 (citing Exh. B1F)); *see Huizar*, 428 F.App'x at 680. The ALJ did not err here.

### 3. Lack of Objective Medical Evidence

"Cycles of improvement and debilitating symptoms are a common occurrence" for those with mental health issues, "and in such circumstances[,] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Reports in improvement "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean a claimant can function effectively in a workplace," especially when no healthcare provider opined that the claimant is capable of working. *Id.* at 1017-18 (citing *Hutsell*, 259 F.3d at 712).

#### a. Analysis

Here, the ALJ erred in relying on a lack of objective medical evidence to discount Plaintiff's testimony because although the ALJ relied on "consistent[]

report[s]" that his symptoms were well controlled with medication, that does not necessarily mean Plaintiff can operate in a workplace. (*See* AR 34.) The few periods of time Plaintiff reported feeling stable or doing well cannot be used to discredit him because the medical record, by and large, shows Plaintiff suffered from anxiety, depression, and a mood disorder. *See Garrison*, 759 F.3d at 1018 ("[T]he data points [ALJs] choose must *in fact* constitute examples of broader development."). To pick out the few instances where Plaintiff's symptoms improved with medication was err. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2011)).

### 4. Jodie Erb's Statements

Jodie Erb, Plaintiff's mother, wrote that Plaintiff keeps to himself a lot, plays online games, and suffers from anxiety, depression, ADHD, attention deficit disorder, and compulsive behavior. (AR 282-83.) Prior to his health issues, Plaintiff played sports, had a lot of friends, rode bikes, and skateboarded. (AR 283, 286-87.) He does not sleep like he should and takes hours to fall asleep. (AR 283.) He does not change his clothes every day, showers maybe once per week, sometimes feeds himself, but doesn't maintain his hair or shave. (*Id.*) Ms. Erb leaves him notes to take care of his personal needs, such as taking medication, and grooming. (AR 284.) She also indicated that he prepares his own meals, like frozen foods and sandwiches, but also that he "never" prepares food or meals. (*Id.*) He does not cook because he is afraid of the stove and gets frustrated and forgets what to do. Plaintiff takes out the trash once per week, though Ms. Erb needs to remind him a few times to do so. (*Id.*) He does not like being around unfamiliar people. (AR 285.) Plaintiff does not go out alone because he doesn't trust people; he is always accompanied by his mother or grandmother. He is also too afraid to drive. When he goes grocery shopping, it takes "about two hours or more because he starts to w[a]nder around." (*Id.*)

///

Plaintiff's hobbies include YouTube and gaming with online friends. (AR 286.) He struggles with memory, completing tasks, concentrating, understanding, following instructions, and, sometimes, getting along with others. (*Id.*) Ms. Erb attributes these problems to his medications. (*Id.*) She wrote that she has "been trying for years to get him disability" because he "really needs" it. (AR 289.)

### a. Applicable Law

Lack of medical training and not being an impartial third-party are not valid reasons to reject lay testimony. *Agatucci v. Berryhill*, 721 F.App'x 614, 618 (9th Cir. 2017); *see Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). However, if the ALJ provides other germane reasons for discrediting testimony, such as inconsistencies with medical evidence, the ALJ's decision to credit or discredit the testimony stands. *Agatucci*, 721 at 618-19 (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("Because the ALJ provided at least one germane reason, the Court upholds his decision."); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *see, e.g.*, *Agatucci*, 721 F. App'x at 618; *Carmickle*, 533 F.3d at 1164 (finding germane to the witness the claimant's ability to complete continuous full-time coursework).

### b. Analysis

Here, the ALJ erred in discounting Ms. Erb's testimony because family and friends "are in a position to observe a claimant's symptoms and daily activities," and here, Ms. Erb lives with Plaintiff, making her witness to his daily affects, moods, and mental limitations. *Bruce*, 557 F.3d at 1116. The error, however, is harmless because Ms. Erb described the same limitations Plaintiff himself described, and the ALJ's reasons for rejecting Plaintiff's testimony—conservative treatment and improvement with medication—apply to Ms. Erb's testimony. *See Agatucci*, 721 F.App'x at 618-19.

///

Although the Court finds that two of the ALJ's stated reasons for discounting Plaintiff's testimony were not clear and convincing, the remaining reasons are more than sufficient to uphold the ALJ's overall credibility determination. *See Carmickle*, 533 F.3d at 1162-63 (holding error is harmless if substantial evidence remains to support the ALJ's credibility finding).

Lastly, Plaintiff argues the credit-as-true doctrine should apply, but the Court disagrees because the decision of the Commissioner is supported by substantial evidence. (Pl. Reply at 6-7); *see Garrison*, 759 F.3d at 1019.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying his application for SSDI and DBI.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 29, 2024

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**
**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**